case number 24-5536 united states of america versus frankie l moffitt oral argument not to exceed 15 minutes per side frank heft for the appellant you may proceed thank you your honor i'd like to reserve three minutes for rebuttal please very well all right may it please the court this case presents two fourth amendment issues the first is that during the traffic stop the officer without reasonable suspicion began a criminal investigation unrelated to the purpose of the traffic stop and second as a result of the unlawful detention the consent to search was invalid as fruit of a poisonous tree and the consent did not extend to the search of the engine compartment the facts excuse me the facts in this case show that the police officer abandoned the traffic stop and began a criminal investigation without reasonable suspicion this this traffic stop was unlawfully extended because the police officer did not expeditiously conduct the traffic stop as required by rodriguez v united states the officer held counsel i have a question on that i it seems like our case law has kind of two parallel running case series when you're talking about what's reasonably related to a routine traffic stop sometimes we've held it is and sometimes we've held it in it's very fact specific so what do you think is the appropriate dividing line between when an officer can ask is there anything illegal in the car and when he can't i i think i think rodriguez holds the answer to that your honor uh rodriguez really sort of cabins what the officer can and can't ask now as far as consent's concerned um i don't i don't allow i don't think that rodriguez allows the officer to ask for consent at the outset rodriguez gives him a little bit of latitude insofar as asking those ordinary inquiry inquiries but consent is not among those inquiries so there has to be something else to prompt him to consent and what that is is the existence of reasonable suspicion they need to have reasonable suspicion before they ask for consent uh unless i i suppose the other example they they can't ask for the consent while the traffic stop is in progress while the mission of the traffic stop has not been accomplished but once that traffic stop is completed as i said if something occurs during the traffic stop uh to create reasonable suspicion i think that does probably prompt uh a question about asking for consent but what about the contention that an officer can can inquire about for example weapons for being present for the purposes of officer safety and he can make that inquiry without any kind of reasonable suspicion no you're well i think i think he has to have some reasonable suspicion the traffic stops are based on terry and terry is two-part one you need the reasonable suspicion to believe that the individual is engaged in some kind of criminal activity and the second part is that you have to put the officer has to have a reasonable belief or reasonable suspicion that they're armed and dangerous so i understand that officer safety is can be a factor in in traffic stops but there has to be some manifestation of it and certainly here there was there was no indication uh officer uh harper began asking those questions when that were unrelated both to the purpose of the traffic stop and to officer safety those questions that he asked about where mr mark mr moffett's girlfriend lived where mr moffett's current address was and what he was doing at the hotel had nothing to do with the careless driving violation that had already been established by the time he came he came back and asked for the registration he had already done the i'm sorry judge there are some cases that seem to suggest that an officer without reasonable suspicion can ask um unrelated questions unrelated to the traffic stop while retrieving from the driver the registration and license and as long as the questions do not prolong the traffic stop for example the drivers in the process of producing the driver's license and registration and while that's going on the officer asks about contraband anything illegal or maybe even questions about where they're going and what the purpose of the trip may be and things like that and as as long as uh as long as the uh stop is not uh elongated as a result of the questions uh what do you say about those cases well yeah your honor's right the uh unrelated questions can't be asked as long as they don't measurably extend the duration of the stop but look at look at this case what the officer what the officer did first of all i said uh rodriguez requires the officer to act expeditiously and what what i think that means is they get a chance to ask for the license registration and insurance and the officer here only asks for the license he went back ran the license check that was clear there were no outstanding warrants at that point they had they made the case for careless driving the court will recall when the stop initially happened the officer told mr moffitt hey you're swerving all over the place uh mr mr moffitt explained his erratic driving and the officer said asked him why and he said well i'm trying to put in my girlfriend's address in my phone and the officer asked well does she does she live here in franklin mr moffitt said yeah then he took then he took the license ran the license check at that point we contended the traffic stop was complete and when he asked for the registration he unduly uh unlawfully prolonged the uh the traffic stop because he had the registration so mr moffitt's not going anywhere and he's compelled at that point to ask to answer those questions and those questions had nothing to do with whether or not he was careless driving where where his girlfriend lived where he lived what he was doing at the hotel careless driving was swerving all over all over the road the officer made the case so those questions were not related to either officer safety or to the traffic stop and therefore they measurably extended the duration of the traffic stop well let me ask you whether the facts of the stop were a little more complicated than that the stop occurs the officer is asking for the license and registration and in the process of obtaining the license and registration the officer then says uh okay um why don't you move the over to the parking lot so we can get out of the traffic so the defendant moves the vehicle and then the officer i guess continues with the process of obtaining and checking on the license and things like that and and the whole uh process i i think winds up um even the finding of the uh uh gun under the hood of the car winds up taking about 10 minutes or less than 10 minutes of course the issue whether whether there was a right to search the under the hood is a kind of a separate issue but in terms of asking the questions and the length of the traffic stop uh isn't there a little an argument to be made that the officers did not exceed their their authority with respect to those things i i don't think i don't think so your honor i think they violated rodriguez and the the facts the facts show that that the officer um had the license alone that that's all he had when he made the initial stop he went back checked it the license was was valid and there were no outstanding warrants and then he went back to mr moffett's vehicle and asked for the registration and the uh you can see mr moffett reaching in the glove compartment he had a plastic bag he found he pulled out the registration the officer had the registration in hand and that's when he began asking those questions so our point is one the traffic stop was already completed when he did the license check and that's what i go back to uh rodriguez requires the officer to act expeditiously and what i mean by that is yeah they get that they get to ask for the license registration and insurance but they get one shot at it rodriguez does not contemplate the officer going going back going up asking for the license checking it coming back then asking for the registration checking that and coming back and then maybe a third time going back and asking for the register the insurance that unduly prolongs the the the stop and i don't think rodriguez talks about uh that the officer has to act expeditiously and the officer didn't do that in this case and when he asked for that registration and began asking those questions that's where the traffic that's unlawfully extended the traffic stop and that's where i i think it goes to those cases judge clay that you mentioned what cases that measurably extend this the stop judge stretch did you um no i i was was looking over the factual situation about the the second request the request for the registration and then while holding it he evidently was asking is there anything illegal in the vehicle after asking for that explanation what is the closest case you think your best case for showing that that is improper prolongation of the of this of the encounter well i think i think rodriguez would be but but i but i also think that the uh that ortiz case from uh the massachusetts supreme court also uh sort of cabins what the what the officers can do it and in this court uh i i think it i think it was in whitley i'm i'm not sure about that but but this court has recognized that with um rodriguez does not tolerate even minimal uh delay and i think that's that's certainly we have more than minimal delay here in well i see that i'm out of time then uh any um how much delay do you think occurred that was improper in terms of minutes or time expended well rodriguez says when the stop is completed or reasonably should have been completed we maintain that the stop was completed when after he did the license check and went back he and went back to the car to ask for the registration at that point he made the case for careless driving he didn't need any other information he saw him swerving he heard the explanation that's the case and so now that that took about the warrant check and the license check took about three minutes and then he began asking um those questions i think it looks i want to say that took about a minute and a half but first of all we maintain that asking the questions when he had the registration unlawfully extended the the traffic stop and when he then when he asked about um anything illegal in the car or consent to search at that point he crossed another line he abandoned the traffic stop at that point and certainly began the criminal investigation without reasonable suspicion there was no reasonable suspicion that that mr moffett was involved in criminal activity no reasonable suspicion that there was anything illegal in the car so that's where i i think if you're breaking down a timeline as soon as he asked the question is there anything illegal in the car he'd crossed the line and abandoned the traffic stop okay i know you're out of time but let me ask you one final thing here um is your argument that um you don't have to the court doesn't should not address the issue of whether the consent permitted the scope of the search to go under the hood of the car where the weapon was found because um had the stop not been unduly extended the officer never would have gotten to the point of asking for consent to search uh the car and therefore uh we don't have to get into whether the scope of the search or the scope of the the consent extended to the area under the hood of the car is that is that part of your argument here yes your honor we we feel that the consent is is part is fruit of the poisonous tree once he violated rodriguez wants to stop the detention was unlawful the consent was invalid as fruit of the poisonous tree the alternate argument is is of course that the consent um did not extend to the engine compartment but you don't have to get to that latter issue if you find that the uh consent was fruit of the poisonous tree all right um we'll uh you're from the government now thank you your honor thank you mr sewell i believe yes yes your honor madison sewell for the united states yes please the court yes you may proceed good to have you here the district court made a factual finding here and that factual finding was that the questions at issue uh that mr moffitt uh complains uh extended the duration of the stop the district court made a factual finding that those questions did not measurably extend the duration of the stop uh specifically the district court said that at the time uh deputy harper made the request to search the car and got consent and the permission was granted that the deputy had not yet completed the tasks associated with the traffic stop specifically a check of the registration district court also says reiterates in the opinion this is both on page 147 of the opinion deputy harper had not yet completed checking moffitt's vehicle registration at the time consent was requested and granted so given that factual finding uh this court uh looks to the district court opinion under a clear error standard and here the district court did not commit clear error in finding that those questions did not measurably extend the duration of the stop well is it is it um i'm not sure that we step into that analysis unless you are in fact in compliance with rodriguez's requirements that there be that the questions are reasonably related to the purpose of the stop first and um and before you may be able to inquire about criminal wrongdoing because your opposing counsel argues that you cannot take one registration one license first go do that then come back talk to him a little more take registration go back and have that exam and talk to him a little bit more um why isn't that a violation of rodriguez once he knew that there were no outstanding warrants or um that there was no outstanding warrant and no reason to further prolong can you serially check documents in order to reach a new question under rodriguez um you can always rodriguez holds that you can always do certain things you can always check license registration those are normal incidents to a traffic stop uh so rodriguez says that in in this case uh the officer first retrieved the license and then retrieved the registration there's nothing that says that that's improper to you know receive them in in that sequential order sometimes as we saw in this case the registration you know was not readily at hand and the license was and so the officer you know came back to uh get the registration afterwards absolutely uh what you said you know there's two parts to the inquiry one one part is are the questions at issue related to the purpose of the traffic stop and then the second part of the inquiry is uh did those questions measurably extend the duration of the stop um even if the questions are not even if this court finds that those questions were not related to the purpose of the traffic stop as long as they didn't measurably extend the duration of the stop then uh the court would still affirm for example if the officer goes to uh do a warrant check and the dispatch says hey this is going to take five minutes we're really backed up the officer can use that five minutes and talk about anything the officer wants to talk about because at that point none of those questions would measurably extend the duration of the stop so here it's similar um you the court does not have to answer the question about on a question by question basis whether or not they were related to the stop so long as it uh relies on the district court's finding that none of these questions whether they were related or not had any uh substantial effect or any measurable uh difference to the duration of the stop well what about the the supreme court statement that you cannot you cannot continue a stop in order to or in fact do inquiries to detect criminal wrongdoing so is it is it your position that you can take the license do that and or and say they say it's going to take us longer we've got five minutes then you can come back and Rodriguez's prohibition of inquiries to detect criminal wrongdoing um does not apply because it's going to take several minutes to do the warrant if if the uh it's uh one case referred to as kind of uh dead time where you're waiting for something to come back and in the uh lot case i believe you know they were waiting for uh dispatch to come back with with some information and during that time um you know there's there's nothing that the officer can do uh to speed up the stop at that point they're just waiting for information to come back from dispatch and so during that time um you know you can an officer can ask questions that are not related to the stop because they will have no effect on the duration of the stop Rodriguez's focus is not extending the duration of the stop and so the officer should not be in effect wasting the the motorist time uh I thought what Rodriguez said was that um the during the purpose of the stop the questions must be reasonably related to the purpose of the stop and not inquiries to detect criminal wrongdoing I guess I'm struggling with where the dividing line would be in your analysis of these cases because it seems to me under your argument as long as dispatch says it's going to take me a little while um the officer can go right back to the car and start inquiring about is there any weapon um what are you engaged in any illegalities can I search your car that seems to be a very simplistic way to get around Rodriguez's requirements well there are there are a number of cases that have held that since a question did not measurably extend the stop so Whitley is one of those cases so Whitley they have uh four questions at issue uh this is on page 530 at issue of Whitley and the Whitley court says that these four questions were not related to the purpose of the stop but nonetheless Whitley says that these questions don't require a reversal because they did not measurably extend the duration of the stop so Whitley Whitley that's an example of questions that are not related to the purpose of the stop the court finds for all four of those questions they're not related but nonetheless because they did not measurably extend the duration of the stop uh the United States still wins in that in that instance also the uh the four the questions at issue here were related to the purpose of the stop and so the questions at issue are you know where uh where are you from um he saw that the license was in Springfield so he's about uh Moffett is about 45 minutes away from home there Springfield's about 45 minutes away from uh where the uh traffic incident happened so he knows that Moffett's 45 ways from home 45 minutes away from home he knows that Moffett is swerving on the roadway he knows that Moffett is shaking he knows that it's after midnight so there's that given that information it's reasonable to inquire about travel plans uh where are you from where are you going uh what were you doing stopped at the hotel and there's a lot of cases um which uh this circuit has uh said the officer can inquire about travel plans what you said at the beginning of defense counsel's argument is absolutely right that um it's context specific so in Whitley for example uh the court says when they're addressing those four questions one of the questions is where are you coming from and the Whitley court says that question was not related to the purpose of the stop so in Whitley the question where are you coming from is not related to the purpose of the stop but that was a very different stop because uh the same judge that wrote the Whitley opinion uh Judge Gilman a few years before that uh also wrote the opinion uh which says that you can look at travel plans and travel plans normally don't offend the um fourth amendment questions about travel plans and that's the Colosso opinion uh which uh Judge Gilman also wrote so Gilman uh Judge Gilman uh says in those two opinions in one case travel plans are relevant in one case travel plans are not relevant and the difference is context the context in Whitley the problem in Whitley is Whitley from beginning to end was a drug investigation uh Whitley you had a confidential informant you had extensive surveillance watching Whitley go from place to place uh you had watching Whitley come out with a pile of money so those questions that were asked there really had nothing to do with the traffic stop which was failure to come to a complete stop instead those questions had everything to do with the drug investigation because the officers already knew where Whitley had come from they they had been watching him they had been doing surveillance so those those there so that's why Whitley says you know that question didn't have anything to do with the stop in Moffitt's case however the question had everything to do with the stop because you do have someone's swerving and it's reasonable for an officer to want to know um how long has this person been on the road how how much further is it going and I guess and I guess the question for me is how long can the colloquy go on because the officer does begin with that where does your live here's the street lives in Springfield you know what were you doing at the hotel which begins to step away but it says I was it was an explanation about his question I was putting the address in my GPS oh about how to get to Franklin oh yes that that immediately turns and says oh I got you okay this is the officer is there anything illegal in the vehicle in that same colloquy no whatsoever no any issues with me searching it well no you don't have any issues I can search so he's um all right no weapons or anything all of these are not traffic related questions correct is there not is there not a problem with Rodriguez on that so the the first three questions about uh where are you going uh where's your girlfriend those are those are related to travel plans so then as um the the question about is there anything illegal in your car and would you be okay with me searching it um that's when he's asking for consent to search and this court has previously um talked about that uh two-step uh technique in asking for a consent to search uh where's your best case yeah that is the I think it's canopy c-a-n-i-p-e it's cited in Mr. Heff's brief and uh the on this is page 602 of that canopy decision talks about uh quotes the Irwin case that says officers were entitled to ask for permission to search using a similar two-step questioning technique the two steps being first is there anything illegal in your vehicle and second well you wouldn't mind if I would want to search then and so it's and Judge Stiver's uh district court reviews it in the same way so for the first three questions about travel plans the district court finds those questions are related to the purpose of the stop and uh the district court makes a factual finding on that for the district court's analysis of the consent it says then there's this um these other two questions is there anything illegal in the vehicle and almost in the same breath um can I have consent to the search the car so that is all related to uh the consent and an officer can ask for consent as long as at the time that the officer asked for consent the stop is not extended if the stop was already extended at that point uh then then the officer is going to be um you know you can't ask for consent after you've extended the stop uh illegally similar to you know if the officer is already in an illegal location the officer you know is not um the consent will not cure it at that point um but that question about um is there anything illegal in the car uh and then can I search that's part of that uh consent process it also it and he can and your position is that he can do that because he has retrieved the registration and rather than checking it he stands there and holds it and asks that series of questions well the officer is is multitasking here for sure so as as uh you see on the body camera the officer is holding up the registration and at the time the officer is doing a number of different things at the same time the officer is looking at the registration also keeping an eye on what's in the vehicle and uh what the uh mr moffitt is doing and also keeping mr moffitt in conversation it's all happening uh very quickly and it's important for an officer to do those things the officer can't look at the uh registration and just completely zone out on uh what uh the driver is doing uh the officer needs to keep an eye on that the officer it's also a good idea how long officer in your understanding of our case law how long can the officer stand there holding the registration that he required that he requested while he talks with the driver and asks and makes what rodriguez calls increase to detect criminal wrongdoing and the the key thing there would be is the officer reviewing the registration and uh the district court here found that the if the officer is just holding it you know and and not reviewing it at all and and just instead leaping into a separate criminal investigation that would be a different factual scenario than what we have but the factual scenario that we have here is that the officer is reviewing the registration and engaging in this conversation simultaneously and that's what the district court found that while uh this uh when at the time consent was granted the officer had not uh finished reviewing the registration and so that's the factual finding that uh puts us in a clear error standard uh here because uh that's what the district court found is there any other questions and um apparently not and if there are no further questions uh we can we can have rebuttal at this time thank you your honor i do have a few points that i would like to make all right go ahead uh first of all let me say one distinction uh i think it's an important distinction here the government relies on that whitley case and keneb the big distinction is there was reasonable suspicion from the start in those case uh keneb was suspected to illegally have possession of a firearm when the traffic stop was made before the traffic stop was made they had him that information and in whitley's case they suspected he was involved in drug dealing and then when the uh when the officer went up uh and approached whitley and questioned him he had a digital scale in his lap well there's all kinds of reasonable suspicion and that reasonable suspicion is a big difference a distinction between those cases and this this case the another thing i'd like to point out is the district court as i said in the brief made a really critical factual finding error on this the district court found that officer harper did not have the registration in hand when he began asking those questions but that's entirely refuted by his body camera he had that registration in hand when he started asking those questions and i think that's an important another important distinction because he could he's obviously was an experienced officer he knows the the rodriguez litany license registration insurance he could have asked for that the first time rodriguez required him to ask for the first time and not piecemeal this invest the uh investigation or the or the traffic stop the uh and and to the extent that the district judge said that harper didn't have time to check the registration well that's on him he had the time he could have asked for it from the get-go and even if and he could have checked it then but here he he decided to check the license first check for outstanding warrants and then go back and continue this traffic stop when the when the traffic stop the reason for the traffic stop or the mission of the traffic stop had been completed uh and the other thing i would like to point out is in the government's argument they they talk about different fact scenarios and in all of these cases that are that are under the precedent of this court and previous decisions and that's very important the facts are important in this case and the facts in this case established either that the uh when uh officer uh harper asked if there was anything illegal that's when he began his criminal investigation but the fourth amendment violation had occurred even before he asked that it occurred after when the officer began asking about the uh where mr moffett lived and he already knew well i see that i'm out of time thought if you oh yeah the point i would like to the one point i'd like to end with is that when officer harper made the initial stop and said hey you're swerving all over what's going on um he asked where you headed buddy or where you headed and mr moffett said uh go on go to my girlfriend and officer harper said she lived here in franklin yeah so he knew all that before he had the registration and started asking questions and and the other thing is you could see mr uh moffett had his phone in his lap when he was answering the officer's questions so if there are no other questions that i respectfully ask the court to grant the belief we've requested in our brief right uh thank you very much mr heft and mr sewell thank you both for excellent uh arguments and the case is submitted and we will uh be in touch with you with our decision um there being no further cases for argument court may be adjourned this honorable court is now adjourned